UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**ADIRONDACK MINES, INC.,**

            **Appellant,**            **1:10-cv-411
                                                                                 (GLS)**

    **v.**

**UNITED STATES TRUSTEE,**

            **Appellee.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE APPELLANT:** | |
| Reizes Law Firm, Chartered | LESLIE N. REIZES, ESQ. |
| 1200 South Federal Highway | |
| Suite 301 | |
| Boynton Beach, FL 33435 | |
| **FOR THE APPELLEE:** | |
| Office of U.S. Trustee | KEVIN J. PURCELL, ESQ. |
| 74 Chapel Street, Suite 200 | |
| Albany, NY 12207 | |

**Gary L. Sharpe
District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Appellant Adirondack Mines, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which was dismissed by the

bankruptcy court pursuant to 11 U.S.C. § 1112(b).  (*See* Dkt. No. 2:9.) Pending is Adirondack's appeal of the bankruptcy court's order.  (*See* Dkt. No. 1.)  For the reasons that follow, the bankruptcy court's order is affirmed and the appeal is dismissed.

## II. Background

Adirondack Mines, Inc., a New York corporation, was formed on March 19, 2009.  (*See* Voluntary Pet. at 28, Dkt. No. 3.)  Christine Thomas is the president and sole shareholder of Adirondack.  (*See id.* at 4, 22.)  On April 1, 2009, shortly after Adirondack's formation, five rental properties located in Las Vegas, Nevada, were transferred to Adirondack by quitclaim deed, four from Thomas and one from a grantor with the same address as Thomas.  (*See* Appellant Exs. 1-5, Dkt. No. 2:5.)  While each deed recites a money amount for consideration, there is no evidence that any payment was made or received.

At the time of the transfer, all five properties were subject to, among other things, a note and deed of trust executed by Christine Thomas or her husband, Anthony Thomas.  (*See* Appellee Exs. B-D, F, H, Dkt. Nos. 7:7-9, 8:1, 8:3.)  Each deed of trust requires the lender's approval of any successor in interest and further includes a "due on sale" clause, which

2

protects the lender's right to demand immediate full payment if the property is sold or transferred without the lender's written consent.  (*See id.*)  At no point prior to the April 1, 2009 transfer of the five properties did Thomas notify or seek to obtain the consent of the lender.  (*See* Thomas Aff. ¶ 5, Dkt. No. 7:3.)

At some point after April 1, 2009, Adirondack issued a promissory note in the amount of $950,000 to International Mining, Inc. for a "[c]laim against [the] State of New York for failure to renew [a] mining permit in Groton, NY."  (*See* Voluntary Pet. at 11, Dkt. No. 3; *see id.* at 16 (identifying International Mining, Inc. as an unsecured creditor with a claim for $950,000).)  Adirondack later submitted that "the value of the claim is speculative."  (*See* Proposed Disclosure Statement at 3, Dkt. No. 2:4.)  There is no evidence that Adirondack has ever commenced litigation against New York State on this claim.  (*See* Lodico Decl. ¶ 3, Dkt. No. 2:6.)  This claim appears to be the only basis for Adirondack's otherwise unsupported assertion that its business includes "[m]ining, sand and gravel exploration."  (*See* Voluntary Pet. at 4, Dkt. No. 3.)

On June 18, 2009, Adirondack filed a voluntary chapter 11 petition, allegedly to reorganize and initiate a chapter 11 plan.  (*See generally id.*)

3

The monthly operating reports submitted by Adirondack showed, inter alia, that Adirondack had made no mortgage payments and thereby accumulated $88,578 in unpaid post-petition secured debt for the period of July 2009 through December 2009. (*See* Dkt. Nos. 3:3-5, 4:9, 4:16, 4:24.) In explaining how it intended to pay this debt, Adirondack only managed to state repeatedly that "[s]ecured [d]ebts have not been paid." (*Id.*)

On February 10, 2010, acting on the U.S. Trustee's motion to dismiss, (*see* Dkt. No. 2), the bankruptcy court issued an oral decision dismissing Adirondack's case under 11 U.S.C. § 1112(b) based on the determination that Adirondack acted in bad faith in acquiring the Las Vegas rental properties and in filing its chapter 11 petition. (*See* Feb. 10, 2010 Hr'g Tr. at 5-6, Dkt. No. 2:12; *see also* Bankr. Order, Dkt. No. 2:9 (memorializing oral decision).)

On April 7, 2010, Adirondack filed a notice of appeal of the bankruptcy court's order with the United States District Court for the Northern District of New York. (*See* Dkt. No. 1.) Adirondack and the U.S. Trustee each filed a Designation of Items to be Included in the Record. (*See* Dkt. Nos. 2-8.) Both parties also filed their briefs with the court. (*See* Dkt. Nos. 10, 12; *see also* Reply Brs., Dkt. Nos. 13, 15.)

4

## III. **Discussion**

The district court sits as an appellate court when a bankruptcy order is appealed. *See* 28 U.S.C. § 1334. The district court may affirm, reverse, or modify the bankruptcy court's ruling, or remand the case for further proceedings. FED. R. BANKR. P. 8013. This court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. *See Nat'l Union Fire Ins. Co. v. Bonnanzio* (*In re Bonnanzio*), 91 F.3d 296, 300 (2d Cir. 1996). The finding of bad faith is generally considered a factual issue that is subject to clear error review. *See C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1312 n.6 (2d Cir. 1997); *see also U.S. Fid. & Guar. Co. v. DJF Realty & Suppliers, Inc.*, 58 B.R. 1008, 1011 (N.D.N.Y. 1986). And a dismissal for bad faith, which involves a bankruptcy court's exercise of equitable discretion, is reviewed for abuse of discretion. *See In re First Conn. Consulting Group, Inc.*, 254 Fed. Appx. 64, 68 (2d Cir. 2007).

Under 11 U.S.C. § 1112(b), a bankruptcy court may dismiss a chapter 11 petition if the party moving for dismissal can establish cause. In addition to the non-exhaustive list of examples enumerated in § 1112(b)(4), cause for dismissal may exist where a chapter 11 petition is filed in bad

faith.  *See C-TC 9th Ave. P'ship*, 113 F.3d at 1310-11.  To establish bad faith, the movant must satisfy a two-pronged test by a preponderance of the evidence.  First, the movant must demonstrate the objective futility of the reorganization process such that at the time of filing there was "no reasonable probability that [the debtor] would eventually emerge from bankruptcy proceedings."  *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991) (citing, inter alia, *Carolin Corp. v. Miller*, 886 F.2d 693, 698-702 (4th Cir. 1989)).  Second, in demonstrating subjective bad faith, the movant must show that there "was no reasonable likelihood that the debtor intended to reorganize."  *Id.*; *see also Farley v. Coffee Cupboard, Inc.* (*In re Coffee Cupboard, Inc.*), 119 B.R. 14, 17-18 (E.D.N.Y. 1990); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996).

"[A] determination of bad faith requires a full examination of all the circumstances of the case; it is a highly factual determination but also one that may sweep broadly."  *C-TC 9th Ave. P'ship*, 113 F.3d at 1312; *see, e.g.*, *Squires Motel, LLC v. Gance*, 426 B.R. 29, 34-36 (N.D.N.Y. 2010).  In making this determination, the following factors should be considered, as they may be indicative of a bad faith filing: (1) the nature and extent of the

6

debtor's assets and debts; (2) the extent of the debtor's business operations, including amount of employees, cash flow, and current expenses; (3) the extent to which the debtor's financial condition is essentially a two party dispute between the debtor and secured creditors; (4) whether the debtor has few unsecured creditors whose claims are small compared to the secured creditors' claims; (5) whether there is a reasonable probability that a reorganization plan can be proposed and confirmed; (6) whether the timing of the debtor's filing evidences an intent to gain a litigation advantage or to delay or frustrate its secured creditors' efforts to enforce their rights; and (7) the nature of the property transfer— whether it involved distressed real property into a newly created entity, whether it occurred within close proximity to the filing of the bankruptcy case, and the amount of consideration paid for the property other than stock in the debtor.  *See C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (relying on the factors set out in *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 139 (Bankr. S.D.N.Y. 2000); *In re HBA East, Inc.*, 87 B.R. 248, 259 (Bankr. E.D.N.Y. 1988).

    Here, the record amply supports the bankruptcy court's finding of bad

faith. In fact, all of the relevant factors indicate that Adirondack filed its petition in bad faith. Adirondack's assets are questionable at best, particularly its alleged mining permit claim. Of equal concern is the growing nature of Adirondack's debt and expenses, which is exacerbated by insufficient cash flow. Adirondack's business operations are facially dubious, as there is no evidence demonstrating that it has employees or that it is actually engaged in mining or sand and gravel exploration. Putting aside the suspect $950,000 demand note held by International Mining, Inc. and the other de minimis unsecured creditors' claims, this matter is essentially a dispute between Adirondack and one secured creditor.[1] And in light of the concerns and objections of Adirondack's secured creditor, (*see, e.g.*, Dkt. Nos. 4:20, 7:2, 8:4), the lack of any showing that Adirondack has improved or attempted to improve its financial posture, and Adirondack's delay in submitting a disclosure statement and plan—a plan that was arguably inadequate nonetheless, (*see* U.S. Trustee's Objections, Dkt. No. 4:10)—there was no reasonable probability that a plan could have been confirmed.

---

[1] While the parties dispute whether Countrywide Home Loans, Inc. remains as the original secured creditor under the deeds of trust or whether BAC Home Loans Servicing, L.P. has since succeeded Countrywide, such a distinction is of no meaningful consequence.

Perhaps most importantly, the nature of the transfer of the Las Vegas properties and the timing of Adirondack's filing weigh heavily, if not conclusively, in favor of dismissal for bad faith.  Within the course of three months, Adirondack was formed, the property transfers occurred, and Adirondack filed for bankruptcy.  It is undisputed that in transferring the five Las Vegas rental properties, Thomas and Adirondack breached the "due on sale" notification and consent requirements set forth in the deeds of trust.  And there is nothing to show that any consideration was ever exchanged.  Thus, as the bankruptcy court correctly concluded, Thomas and Adirondack transferred the properties "solely to allow a bankruptcy filing," (Feb. 10, 2010 Hr'g Tr. at 5, Dkt. No. 2:12), and with no true intention to reorganize.

Therefore, having reviewed the bankruptcy court's factual findings for clear error, the court finds no error.  Given the suspicious nature of both the property transfer and Adirondack as an entity, dismissal was appropriate to protect the secured creditor's claims and to guarantee and preserve the good faith participation in the reorganization process that the Bankruptcy Code envisions.  Accordingly, because the bankruptcy court exercised its discretion appropriately, its decision is affirmed.

## IV. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the judgment of the bankruptcy court is **AFFIRMED**; and it is further

**ORDERED** that Adirondack's appeal is **DISMISSED**; and it is further

**ORDERED** that the Clerk enter judgment and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 16, 2010
Albany, New York

_____
United States District Court Judge